Morris E. Spector, J.
This is an article 78 proceeding to review the determination of the respondent which imposed certain conditions in granting petitioner’s application to eliminate and curtail services to the tenants of three buildings.
Petitioner owns three adjoining buildings located at 304, 314 and 324 East 41st Street, containing 200 apartments. Each building has a separate lobby. Switchboard services are located in 304 East 41st Street and the other two buildings are serviced by manually operated elevators. In 304 East 41st Street, petitioner had previously been permitted to convert the elevator on condition 24-hour lobby attendant services were provided.
Respondent authorized the petitioner to discontinue switchboard services, to convert the manually operated elevators in 314 and 324 East 41st Street, to create one connected lobby for the three buildings and to close the lobby entrances of 304 and 324 East 41st Street between 12 midnight and 8:00 a.m. on 10 conditions 4 of which are attacked as unreasonable.
Petitioner’s objection to the requirement of maintaining lobby attendance in the lobbies of 304 and 324 East 41st Street for 16 hours daily lacks merit. The record discloses that lobby protection was provided either by elevator men or switchboard operators in 304 and 324 East 41st Street. The discontinuance of the switchboard and the conversion of the elevator in those buildings would necessarily result in the elimination of the protection afforded the tenants and decrease the essential services rendered those tenants. Moreover, the closing of the lobby entrances would deprive the tenants of those entrances and compel them to traverse long corridors from the lobby of 314 East 41st Street which could not be kept in view by the lobby attendant in that building. Since the respondent had the power to require continuance of protection in the lobbies as a condition to the elimination of the switchboard and the conversion of the elevators, his determination was not arbitrary or capricious (Matter of Jerlan Holding Corp. v. McGoldrick, 281 App. Div. 545). In view of the fact that the closing of the lobby entrances to 304 and 324 East 41st Street would seriously inconvenience the tenants of those buildings and deprive them of adequate protection, the respondent’s determination permitting the closing of the lobbies only during the hours from midnight to *842 8:00 a.m. was not unreasonable (cf. Matter of First Terrace Gardens v. McGoldrick, 1 N Y 2d 1).
The requirement that petitioner install connections for the intercommunication system of the three buildings to the lobby attendants at 304 and 324 is a reasonable condition if a central system is to be maintained in 314 Bast 41st Street. Obviously, the elimination of lobby attendant services at the other two buildings during 8 hours of the day requires a central system in 314 Bast 41st Street to provide communication between the tenants and the lobby attendant during those hours. Since lobby protection is to be furnished during the remaining 18 hours of the day it is essential that messages and communications to the lobby attendants during those hours be provided. As some reasonable means must be furnished to enable the tenants to keep in contact with the attendants, the additional connections are necessary.
However, the requirements that petitioner install a public telephone in 314 Bast 41st Street, and pay the deposits for the installation of private telephones in the apartments of tenants who request same where their switchboard service is eliminated, are unreasonable. Petitioner offered to install a telephone to receive messages for the tenants who had been furnished with switchboard services and to pay for the installation of private telephones if the tenants using the switchboard have no private telephones and request one. As the petitioner points out, the installation of a public telephone would interfere with the receipt of messages for the tenants since the ’phone would be tied "up with outgoing calls. It should be sufficient if a public ’phone is installed for outgoing calls. No rational basis exists for requiring petitioner to guarantee the tenant’s credit by depositing money with the Telephone Company in connection with the installation of private telephones for the tenants. Any credit arrangement should be effectuated between the tenant and the Telephone Company. Since the petitioner is willing to pay the cost of installing the telephones, the tenants will be sufficiently protected from the expense arising from the elimination of switchboard services.
Accordingly the Administrator’s determination in respect of the installation of the public telephone and the payment of the telephone deposits is arbitrary and capricious. The matter is, therefore, remitted to the Administrator for further action in conformity herewith.